KEITH v. WINTERS et al.

No. 31570. Dec. 12, 1944.

154 P. 2d 83.

Hamilton & Kane, of Pawhuska, for plaintiff in error.

Hunt & Eagleton, of Tulsa, for defendants in error.

DAVISON, J. This is a probate case which originated in the county court of Osage county. The county court allowed as a claim against assets of the estate of Ella Todd Quarles a judgment in favor of J. W. Keith entered by the district court of Osage county.

On appeal the district court of Osage county decided the assets of the estate in the hands of the administrator were exempt from payment of the Keith judgment claim and for that reason disallowed the same. The claim was presented by Keith or his attorney, to Mr. C. S. MacDonald, attorney for the administrator, W. H. Aaron, during the first few days (September 5th to September 12th) of September, 1942. The attorney retained the claim for the purpose of investigating its merits until about November 12, 1942, on which date it was approved by the administrator and allowed by the county judge of Osage county.

The entire assets of the estate consisted of money derived from fraternal insurance and property purchased with such money. The fraternal insurance was on the life of James J. Quarles, the husband of Ella Todd Quarles, who died in 1941. At the time of his death Mr. Quarles was insured by the two fraternal insurance companies. He held a $3,000 policy in the Knights of Pythias and a $3,000 policy in the Modern Woodmen of America, a total of $6,000. With a portion of this money Mrs. Quarles purchased $1,000 worth of Louisiana Land and Exploration Company stock. The assets of the estate were listed as cash in bank, $3,-909.46, and Louisiana Land and Exploration Company stock, $1,000.

In deciding the exemption feature of the case we must construe section 283 of 36 O. S. 1941, which provides:

"The money or other benefit, charity, relief or aid to be paid, provided or rendered by any association authorized to do business under this article, shall not be liable to attachment, by trustee, garnishee or other process, and shall not be seized, taken, appropriated or applied by any legal or equitable process, or by operation of law, to pay any debt or liability of the certificate holder, *or of any beneficiary named in any certificate,* or any person who may have any right thereunder." (Emphasis ours).

The claim of Keith is based upon a judgment of the district court of Osage county rendered in September of 1931 in favor of the Citizens National Bank of Pawhuska against Mr. and Mrs. Quarles. The judgment was for the principal sum of $3,583.35 plus interest thereon at the rate of 10 per cent from June of 1931, and $368.30 attorneys' fees, a total of $7,726.12.

The Citizens National Bank of Pawhuska ceased to do a banking business in 1931. It was liquidated. J. W. Keith was one of the liquidating committee. In 1941 he purchased the remaining assets of the bank, including the judgment presented herein as a claim. The purchase price was $25.

Throughout the years the judgment was kept alive by execution issued for its collection.

All other claims against the estate in the aggregate sum of $922 have been paid by the administrator, Aaron. The assets of the estate are therefore cash derived from fraternal insurance, about $3,000, and Louisiana Land and Development Company stock, $1,000.

A casual examination of the statute, section 283, supra, indicates that the cash is exempt from the payment of the judgment or any portion thereof. Mr. and Mrs. Quarles were the judgment debtors. The insurance was on the life of Mr. Quarles and Mrs. Quarles was the designated beneficiary. The judgment debt was the debt of both or either. In this proceeding it is sought to be enforced as a claim against the estate of the beneficiary of the insurance, Mrs. Quarles.

The statute (sec. 283, supra) has been construed in part by a number of cases by this court. State of Oklahoma ex rel. Lankford v. Collins et al., 70 Okla. 323, 174 P. 568, 6 A.L.R. 603; Stekoll v. Abraham, 90 Okla. 218, 217 P. 410; Modern Woodmen of America v. Crudup, 175 Okla. 183, 51 P. 2d 718; Supreme Forest, Woodmen Circle, v. Bowen, 180 Okla. 534, 71 P. 2d 480; Johnson v. Roberts, 124 Okla. 68, 254 P. 88. These cases hold that the money or other benefits coming to the beneficiary from a certificate of insurance on the life of one of the members of a fraternal insurance company are exempt from legal process for the debts of such beneficiary.

The situation presented to us in each of the foregoing cases differs from the case at bar in one respect. In this case the beneficiary is dead. In each of the cited cases the beneficiary was still alive when the litigation occurred. In this case the controversy is between the heirs and devisees of the beneficiary and creditor of such beneficiary whereas in the cited cases contests arose between the beneficiary and a creditor. The question here to be decided is whether, under the statute, the exemption in favor of the beneficiary will retain its exempt character against the debts of the beneficiary in favor of the heirs of the beneficiary.

A number of states, including Missouri and Nebraska, have the identical statute as section 283, supra, and the latter states have construed the statute in deciding the question in controversy. In Grand Lodge Ancient Order of United Workmen v. Dister, 77 Mo. App. 608, the Court of Appeal for St. Louis stated:

" . . . The obvious purpose of the statute was to exempt the fund due on a benefit certificate from involuntary application to the debts of the beneficiary named therein or the person entitled thereunder."

And:

"Under the facts shown in the petition when the member of the respondent order died, the right to receive the fund at once vested in the intestate of the administrator, who was then alive, with all the safeguards thrown around her ownership and enjoyment by the statute under consideration. She having died before receiving payment, the fund did not on that account lose the exemption from application to her debts which attached to it during her life, but retained that quality. For if this were not true the statute would only protect the fund against the creditors of a named beneficiary provided such beneficiary got actual possession of it before death. Such a construction is opposed to the law and spirit of the act. As it was then a fund secured from her creditors and yet a part of her estate, the only question to be answered is who, under the laws of Missouri, was entitled to receipt for it to the respondent order? Under our laws except upon an order of the probate court dispensing with administration, the only party entitled to the assets of the estate of an intestate is the administrator. . . . "

And in Coleman v. McGrew, 71 Neb. 801, 99 N. W. 663, it was said by the Supreme Court of Nebraska:

". . . This statute clearly exempts

these funds from the debts of the testatrix, and constitutes them a trust fund in the hands of the executor for the benefit of plaintiffs, who are legatees and sole heirs at law of the deceased."

Upon consideration of the foregoing authorities and careful scrutiny of the language of the statute by which we are governed, we conclude that the money and bank deposits held by the administrator are exempt and therefore not available for payment on the Keith claim.

Our next consideration is the corporation stock owned by the deceased and now held by the administrator. This stock was purchased with a part of the insurance money. Is it exempt?

On this question there is a definite conflict in the authorities. There are two annotations on the subject, 24 L.R.A. (N.S.) 1918 and 96 A.L.R. 410. In the latter annotation the annotator observes that:

"There is but little authority upon this question, and in the few cases specifically discussing the point, there is a conflict of authority."

In Bank of Brimson v. Graham et al., 335 Mo. 1196, 76 S.W. 2d 376, 96 A.L.R. 399, it is said:

" . . . We have found no persuasive authority holding that under such a statute the money may be invested in other property not exempt and such statutory exemption be extended thereto. Had the Legislature so intended, it might easily have said so. Despite an apparent analogy between the instant case and Cook v. Allee et al., supra, we decline to follow the latter. The evils of such judicial legislation are suggested at length in cases above cited, and we find no warrant for indulging therein. Consequently, this issue is ruled against respondents."

In Pefly v. Reynolds, 115 Kan. 105, 222 P. 121, it was held that property purchased with money derived from fraternal insurance was not free from the burden of taxes levied against the same.

In Ross v. Simser, 193 Minn. 407, 258

N.W. 582, bonds purchased by the beneficiary with money received from insurance were held subject to garnishment. In deciding the point the court remarked:

". . . we must take the statute as we find it and are not at liberty to add to it by a process which, if indulged in, would be an amendment and, in effect, judicial legislation."

In Merrell Drug Co. v. Dixon, 131 Ky. 212, 115 S.W. 179, 24 L.R.A. (N.S.) 1018, it was held that the statutory exemption does not extend to property purchased with exempt funds. The court therein observed:

"Our conclusion, then, is that the exemption contained in the charter of the Ancient Order of United Workmen and in the statute does not apply to the fund after its form is changed and it is invested in other property. When it is so invested, the property purchased becomes a part of the great mass of property in the commonwealth, and is controlled by the general laws relating thereto. That being the case, appellee's property is not exempt from execution for her debts, except to the extent of her homestead therein."

Upon consideration of the foregoing authorities we are of the opinion, and hold, that exempt money which is used to purchase property which is nonexempt will not permit the property so purchased to be exempt property. Our statute should be accepted and applied according to its terms without judicial expansion. We therefore conclude that the stock of the Louisiana Land and Development Company was and is subject to sale for the payment of debts of the deceased beneficiary.

With reference to the character of the estate's assets and their availability for the payment of debts of the deceased, our conclusion is that the money was exempt and is exempt from the payment of the claim herein, and that the Louisiana Land and Development Company stock is free from such exempt character.

Our next problem is to determine whether the claim presented by the

creditor, Keith, was handled in such a manner that payment may be made.

The notice to creditors was dated August 14, 1942. In September, between the 5th and 12th day, an adequate claim was delivered to Mr. C. S. Macdonald, attorney for the administrator. Mr. Macdonald retained the claim for the purpose of investigation until November 12th, at which time he had concluded the claim should be paid. He then advised his client, the administrator, who noted his approval as of the last mentioned date. The claim was thereupon presented to the county judge, who allowed the same on the same date.

The heirs take the position that the retention of the claim for ten days without allowance constituted a rejection thereof, and that the only remedy of the creditor, Keith, was to institute an action thereon in a court of competent jurisdiction within three months from said tenth day. In support of this position our attention is called to 58 O.S. 1941 §337, which provides:

"When a claim accompanied by the affidavit required in this article, is presented to the executor or administrator, he must indorse thereon his allowance or rejection, with the day and date thereof. If he allowed the claim, it must be presented to the judge for his approval, who must, in the same manner, indorse upon it his allowance or rejection. If the executor or administrator, or the judge refuse or neglect to indorse such allowance or rejection for ten days after the claim has been presented to him, such refusal or neglect is equivalent to a rejection on the tenth day; and if the presentation be made by a notary, the certificate of such notary, under seal, is prima facie evidence of such presentation and rejection. If the claim be presented to the executor or administrator before the expiration of the time limited for the presentation of claims, the same is presented in time, though acted upon by the executor or administrator, and by the judge, after the expiration of such time."

And section 339, Id., which reads:

"When a claim is rejected, either by the executor or administrator, or the judge of the county court, the holder must bring suit in the proper court, according to its amount, against the executor or administrator, within three months after the date of its rejection, if it be then due, or within two months after it becomes due, otherwise the claim is forever barred."

Did the delay of the administrator's attorney in investigating Keith's claim affect the status of the same as an allowable item?

The administrator, Aaron, is a doctor. His office is in the Triangle Building at Pawhuska. The notice to creditors posted and published in August specified that building as the place for presentment of claims. The office of Mr. Macdonald is in another building in Pawhuska.

All claims against the estate were delivered directly to Mr. Macdonald and investigated by him before action of the administrator or county judge in the approval or rejection thereof. Thus nothing unusual occurred in the method employed in treating the case at bar, or the claims connected therewith, except that it and other claims against the estate were presented to the attorney for the administrator rather than the administrator, although the office of the latter was designated in the notice to creditors as the place to present claims.

Our statutes prescribe the form of a notice to creditors. The form prescribed was used in this case and the place for presenting claims was designated in the notice. Mr. Macdonald was employed as attorney for the administrator with will annexed. He was not designated as the person to whom claims should be presented.

In 34 C.J.S. 186, it is said:

"A personal representative's employment of an attorney to settle the estate does not, of itself, show that the latter had authority to receive claims. If the statute requires presentation to be made to the personal representative and does not provide for presentation to his agent or attorney, claims must

be presented to the representative in person, and presentation to his agent or attorney is insufficient, unless it is shown that the agent or attorney delivered the demand or notice to his principal in due time."

The foregoing text is based upon the New Hampshire case of Hurd v. Varney, 83 N.H. 467, 144 A. 266, and the Nevada case of Douglass v. Folsom, 21 Nev. 441, 33 P. 660, 22 Nev. 217, 38 P. 111.

The claim was allowed within the four-month period designated for the presentment of claims.

In presenting this cause the heirs and devisees also urge that since J. W. Keith was a liquidating agent of the bank he could not purchase the remaining assets of the bank, including the judgment herein presented. A number of authorities are called to our attention indicating the illegality of such a purchase; however, it appears that the heirs and devisees are not the proper persons to raise the question. Generally speaking, the question is one that cannot be raised by any person who is not a beneficiary of the trust involved, which in this case would be the stockholders of the dissolved bank, all of the depositors and other creditors of the bank having been paid in full. 26 R.C.L. 1325, para. 188 et seq., and 26 R.C.L. 1330, para. 193 et seq.; 65 C.J. 762-763, sec. 632; 65 C.J. pg. 771, sec. 643; Buell v. Buckingham, 16 Iowa, 284, 85 Am. Dec. 516; Wilson v. Troup, 2 Cowen (N.Y.) 195, 14 Am. Dec. 458. The contention is without substantial merit.

In presenting this cause on appeal the heirs urge that the same should be dismissed by reason of the failure of the heirs to make the administrator, Aaron, a party to the appeal. Prior to consideration of this cause on appeal the motion to dismiss was overruled upon authority of City of Sapulpa v. Young, 147 Okla. 179, 296 P. 418. We deem it unnecessary to reconsider our prior ruling on the motion.

This cause is affirmed in part and reversed in part in accord with the foregoing views.

CORN, C.J., GIBSON, V.C.J., and RILEY, OSBORN, WELCH, HURST, and ARNOLD, JJ., concur.